STATE, EX REL. TUTTLE, APPELLEE, v. WENDALL A.
BIRDSALL, APPELLANT.

FILED FEBRUARY 28, 1911.   No. 16,846.

1. Habeas Corpus: MISDEMEANOR: DEFECTIVE COMPLAINT. "After trial
and conviction for a misdemeanor, a prisoner will not be liberated
on a writ of habeas corpus because of the insufficiency of the com-
plaint in said criminal proceedings, if by any possible construc-
tion of the language employed therein an offense against the law
is thereby even defectively stated." In re Caldwell, 82 Neb. 544.

2. Appeal: QUESTIONS REVIEWABLE. Questions discussed in the brief
of an appellant which are not raised by the findings or judgment
of the district court as contained in the record will be consid-
ered by this court only so far as may be necessary to a proper
decision of the case.

APPEAL from the district court for Dawes county:
WILLIAM H. WESTOVER, JUDGE. Reversed.

E. D. Crites, for appellant.

B. P. McKelvey, contra.

BARNES, J.

This is an appeal from an order of the district court
in habeas corpus discharging one Trissie Tuttle from the
custody of the sheriff of Dawes county. It appears that
on the 26th day of February, 1910, a complaint was filed
before the county judge of that county charging said
Tuttle with a violation of the provisions of section 242*
of the criminal code. A warrant was issued for her
arrest. She was brought into court and tried on the
charge of vagrancy contained in the complaint. She was
found guilty and was committed to the industrial school
for girls at Geneva, Nebraska. A warrant of commitment
was issued and delivered to the respondent, who took her
into his custody for the purpose of executing the same,
and thereupon the parents of the girl obtained from the
judge of the district court a writ of habeas corpus. On

the return of the officer to the writ, a hearing was had and she was discharged from custody. The respondent has appealed.

The record discloses that the accused was past 16 and less than 18 years of age when the complaint was filed. That fact is recited in the judgment of the county court. It must be conceded that the county judge had jurisdiction to try her on a criminal complaint, and we have frequently held that where the inferior court has jurisdiction of the subject matter and the person of the defendant, and the complaint, viewed in a liberal sense, can be construed to charge a violation of any section of our criminal code, unless it appears that no evidence was produced to sustain the charge, the defendant will not be released in a habeas corpus preceeding.

In *Ex parte Fisher*, 6 Neb. 309, this court held that, in a habeas corpus proceeding where the relator was convicted of a criminal offense, the judgment of the inferior court was conclusive as to every question of law, as well as of fact, that might have been considered and determined in the trial of the criminal case, and that we would not go behind the record of conviction and determine the constitutionality of the statute upon which such conviction was based. This case has never been overruled, in express terms, but the doctrine there announced has been somewhat modified by our more recent decisions. See *Keller v. Davis*, 69 Neb. 494; *Michaelson v. Beemer*, 72 Neb. 761; *In re McMonies*, 75 Neb. 702. These cases, however, simply hold that, if the proceedings leading up to the detention are absolutely null and void, the prisoner may be released on a writ of habeas corpus. We think the true rule for the determination of such cases was announced in *In re Caldwell*, 82 Neb. 544, and in *Rhyn v. McDonald*, 82 Neb. 552, where it was said: "After trial and conviction for an alleged misdemeanor, a prisoner will not be liberated on a writ of habeas corpus because of the insufficiency of the complaint in said criminal proceedings, if by any possible construction of the language

employed therein an offense against the law is thereby
even defectively stated." This rule seems to be well sup-
ported by *Ex parte Williams*, 121 Cal. 328; *Ex parte
Hurlan*, 1 Okla. 48; *Ex parte Stacey*, 45 Or. 85; *Ex parte
Williford*, 50 Tex. Cr. Rep. 417, 100 S. W. 919; *Ex parte
Crabbs*, 79 Miss. 358, 30 So. 708; *McLaughlin v. Etchi-
son*, 127 Ind. 474; *Ex parte Upson*, 7 Cal. App. 531; *In re
Ruef*, 150 Cal. 665.

While the criminal complaint found in the record in
this case is inartificially drawn, and many things·are con-
tained therein which may be considered as surplusage, yet
we are unable to say that it is insufficient to charge the
defendant with the crime of vagrancy. Therefore, it ap-
pearing by the return of the relator that he held the
petitioner as a defendant in a criminal case under a war-
rant of commitment issued after she had been tried and
found guilty of a criminal offense, it was error for the
district court to release her upon a writ of habeas corpus.

It is stated in the respondent's brief that the district
court held that the act of 1905 (laws 1905, ch. 59), com-
monly called the "juvenile court law," repealed articles I
and II, ch. 75, Comp. St. 1909, known as the "reform
school act." There is nothing said in the findings or judg-
ment of the trial court upon that question, and out of
fairness to that court we have felt that we should not
determine that question.

For the determination of this cause, it is sufficient to
say that by the constitution and the statutes of this state
the county court is given jurisdiction to try and determine
misdemeanor cases, like the one in question, and the act
of 1905 does not deprive that court of such jurisdiction.
In such cases, if there is a conviction, it is the duty of the
court, as provided by section 5 of the reform school act,
to commit the offender, if a boy, to the reform school, and,
if a girl under 18 years of age, to the industrial school
for girls. Finally, it appears that after the complaint
was filed and the defendant was taken into custody the
case could not be transferred to the juvenile court because

the defendant was over 16 years of age. See section 10, art. II, ch. 20, Comp. St. 1909. The county court therefore properly retained jurisdiction, and its judgment may not be reviewed by habeas corpus proceedings.

For the foregoing reasons, the judgment of the district court should be, and it is hereby,

REVERSED.

SEDGWICK, J., dissenting.

Trissie Tuttle was arrested upon warrant issued by the county judge of Dawes county upon a complaint filed in that county which charged her, it is said, with the "crime of vagrancy." The county judge found and certified that "she was 16 years of age her last birthday which was on December 5th." This finding was made on the 4th day of March, 1910, so that she will not be 18 until next December. The county judge ordered that she be sent to the state industrial school at Geneva, and the district court upon hearing of the writ of habeas corpus decided that the order of the county judge was without authority of law, and ordered that she be released from custody.

The majority opinion reverses the judgment of the district court and remands her to the custody of the sheriff under the order of the county judge. In the opinion it is said that she is between the ages of 16 and 18, and it is also said in the opinion "that after the complaint was filed and the defendant was taken into custody the case could not be transferred to the juvenile court because the defendant was over 16 years of age." I think this is a mistake. The original juvenile court act (laws 1905, ch. 59) expressly applies only to girls under the age of 16 years. The first clause of the first section provides that "that act shall apply only to children under the age of sixteen (16) years." The seventh section begins as follows: "When any child under the age of sixteen (16) years shall be found to be delinquent." At the next session of the legislature this was changed. Laws 1907, ch. 45. The first section there was amended so that it reads, "This act shall apply only to minors," and the seventh sec-

tion reads, "When any child under the age of eighteen (18) years shall be found to be delinquent," etc., making the act expressly apply, as its original title would indicate, to all children. This amendment was overlooked in deciding *Holton v. Sampson*, 81 Neb. 30. The title of the original act was "An act to regulate the treatment and control of dependent, neglected and delinquent children." The first section of the act as it now is provides that the words "delinquent child" shall include any child under the age of 18 years who violates any law of this state or any city or village ordinance, and section 7 provides: "When any child under the age of eighteen (18) years shall be found to be delinquent, dependent or neglected within the meaning of this act, the court may make an order committing the child to the care of some suitable institution, or to the care of some reputable citizen of good moral character, or to the care of some association willing to receive it, embracing in its objects the purpose of caring for or obtaining homes for dependent or neglected children, which association shall have been accredited as hereinafter provided, or if under the age of sixteen (16) years, to the care of a state industrial school. The court may, when the health or condition of the child shall require it, cause the child to be placed in a public hospital or institution for treatment or special care, or in an accredited and suitable private hospital or institution which will receive it for like purpose without charge." So that when any child under the age of 18 years is found to have violated any law of this state, it is delinquent, and section 7 provides what shall be done. The court by section 7 may commit such children to the care of some suitable institution, or some respectable citizen, or some association willing to receive it, "or if under the age of sixteen (16) years, to the care of a state industrial school," so that the court has no power to commit a girl between 16 and 18 years of age to the state industrial school. This provision of the law is plain and positive and does not require construction. There are some sections of the

juvenile court act that have been thought to be inconsistent with these provisions. The first section says that the act shall not apply to those "who are now, or who shall hereafter become, inmates of a state institution, or of any training school for boys or industrial school for girls, * * * unless such children shall have been placed therein under and by virtue of the provisions of this act." This implies two things: First, that the juvenile court may commit under proper conditions girls to the industrial school; and, second, it also implies that there may be girls committed to the industrial school not under the provisions of this act. If this means that the practice may continue of arresting girls charged with crime under the old statute, and in the county courts of the state, and that the county court may order them committed to the industrial school, such a construction would make this provision of the act inconsistent with the other provisions referred to. However, there is another construction that may be given to this. When young girls have been committed to the state industrial school, and it is found that they can be better taken care of otherwise, they may be paroled. This has been done frequently when the girls were of a tender age. If it then turns out that they are not fit for parole and ought to be returned, no proceedings are necessary, except the authority of the industrial school to return them to that institution. This clause that we are considering in the first section may apply to such cases as that. However that may be, the positive statement that girls under the age of 16 years may, under some circumstances, be sent to the industrial school, as found in section 7 of the act, prohibits sending girls over the age of 16 years to the industrial school, unless they have been previously committed to that institution and have been paroled or have escaped therefrom.

The majority opinion appears to be based wholly upon section 10 of the act. This section makes it the duty of the justices of the peace and police magistrates to transfer cases to the juvenile court when the child charged with

crime is under 16 years of age.  This section was not changed when the other sections of the act were changed so as to make all children under 18 years of age subject to the jurisdiction of the juvenile court.  This court, of course, cannot amend a section of the statute to correct an oversight of the legislature; but, when the section as it is allowed to remain is inconsistent with all other sections as amended, the court must construe them together and enforce the intention of the legislature.  Justices of the peace and police magistrates cannot commit children to the reform or industrial schools under any circumstances. When children are before the county court, as in this case, that court has jurisdiction under the juvenile act.  The seventeenth section of that act is as follows:  "This act shall be liberally construed to the end that its purpose may be carried out, to wit:  That the care, custody and discipline of a dependent, neglected or delinquent child shall approximate, as nearly as may be, that which should be given by its parents, and in all cases where it can be properly done, the child to be placed in an approved family home and become a member of the family by legal adoption or otherwise."

It is said in the majority opinion that "the case could not be transferred to the juvenile court," and section 10 of the act is referred to as compelling such a conclusion. I think that in view of the other sections of the act, and the whole purpose of the legislature, and the amendments that have been made, justices of the peace and police magistrates should transfer the case to the juvenile court when the defendant is under 18 years of age, and so come within the purview of the juvenile court law; but, however that may be, section 10 has no application to the county court.  That court, as already shown, has jurisdiction under the juvenile act, and to hold that, as a county court, the judge cannot transfer a proper case to himself as judge of the juvenile court is wholly unwarranted.  When a case comes before him that belongs to the juvenile court he should act as such court, and that court has no power

41

to send a child over 16 years of age to the reform or industrial school. Perhaps the district court should not have discharged the defendant under the .writ of habeas corpus. That court might have proceeded under the juvenile law, or possibly might have remanded the defendant to the county court for that purpose. But, in any view of the case, the warrant to the sheriff for the purpose of taking the defendant to the industrial school was in violation of the express provisions of the juvenile court law and was void, and the defendant was properly released therefrom.

The complaint in this case charges that this girl was "in total want of proper parental care,". and the record fully justifies the charge. Her parents were living in the county and at the place where she was arrested. If she was a vagrant, it was their fault rather than her own. The circumstances were wholly insufficient to justify the order of the county court. It was peculiarly a case for the juvenile court. Of course, the sufficiency of the evidence should have been tested by appeal, and not by habeas corpus proceedings, but these considerations show the conditions for which the legislature was attempting to provide, and assist in construing the conflicting sections of the statute. If it is true that a young woman between the ages of 16 and 18 years, who has no means of support and is not properly cared for by her parents, may be arrested upon charge of vagrancy and sent to the industrial school without the assistance of the juvenile court and the probation officers of that court, or of the detention home now provided for by the amendments of 1907, it would seem that the juvenile court law is essentially a failure.